The Honorable Louis McJunkin State Representative P.O. Box 223 Springdale, AR 72765-0223
Dear Representative McJunkin:
This is in response to your request for an opinion on the following two questions concerning the Arkansas Fire Fighters' Deferred Retirement Option Plan ("DROP") codified at A.C.A. § 24-11-830 (Repl. 1996):
 1. Pursuant to language in the answer to the third question posed in Attorney General Opinion No. 97-007, when a person is still working but has elected to be a DROP participant, should the 6% deduction from the DROP participant go into a separate account or go into the regular pension fund and then taken out upon retirement?
 2. If someone elects the DROP plan, is his eventual retirement subject to pay increases received while working for the City after signing up for DROP, or is he only to receive pension based on the salary amount he was earning at the time he signed up for the DROP?
It is clear, in response to your first question, that the DROP participant's contribution continues to be paid into the firemen's pension and relief fund. See A.C.A. § 24-11-830(d)(1) and Arkansas Fire and Police Pension Review Board "Board Rule 10," Section 6. Section 6 of Board Rule 10 states:
 The member continues to make employee contributions during the DROP period. These employee contributions are credited to the pension plan and not to the individual's DROP account.
With regard to Attorney General Opinion 97-007, I assume that the language at issue is the statement therein that "[e]mployees who have elected to participate in DROP are no longer contributing to the firemen's pension fund as described in A.C.A. § 24-11-816. Rather, the bulk of their contributions are segregated into a separate fund." Id. at 3. This statement was made in addressing the question of whether DROP participants should vote as active members or as retired members during the DROP period. See A.C.A. § 24-11-801 (Repl. 1996). The emphasis in that Opinion was upon the distinction between DROP participants and active members whose contributions are governed by A.C.A. § 24-11-816. The point of the language quoted above was that DROP participants are not contributing to the pension fund in the same sense as active members. This language followed the statement that DROP participants "are not participants in the firemen's pension fund as described in A.C.A. §24-11-816." Op. Att'y Gen. 97-007 at 3. Granted, their employee contributions continue to be credited to the pension fund. See Board Rule 10, § 6 above. But one-half of the employer matching contribution is credited to the DROP account. See A.C.A. § 24-11-830(d)(2). Compare
A.C.A. § 24-11-816(a)(4). And the monthly retirement benefits that the DROP participant would have received had he or she elected a service retirement are being paid into the DROP account.
The language in Opinion 97-007 concerning the DROP participants' contributions should thus not be construed to mean that such contributions are not paid into the pension fund. Clearly, as noted above, the pension fund is credited with these contributions. Opinion97-007 is hereby modified to the extent it suggests otherwise. This does not, however, alter the conclusion reached in Opinion 97-007 with respect to DROP participants voting as retired members under A.C.A. §24-11-801(d).
With regard to your second question concerning pay increases during the DROP period, I assume that you have received Attorney General Opinion97-210, issued to you on July 9, 1997, subsequent to my receipt of the request at hand. I have nevertheless enclosed a copy of that opinion for your convenience.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh